UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAVID JOYCE                        :
                                   :               PRISONER
        v.                         :   Case No. 3:05cv1477(WWE)
                                   :
CHRIS HANNEY, et al.               :

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff David Joyce, currently confined at the Garner
Correctional Institution in Newtown, Connecticut, commenced this
civil rights action pro se pursuant to 28 U.S.C. § 1915.
Plaintiff alleges that defendants[1] Chris Hanney, Demitrius
Johnson, Lt. Onofrio, Michael Lajoe, CO Saraju, Remi Acosta, Mark
Strange, Nurse Quenneville, Major Coletti, Deputy Warden Murdoch,
Deputy Commissioner Murphy and State Trooper Matlock, used
excessive force against him, falsified documents and destroyed
the video surveillance tape that would have supported his claims,
were deliberately indifferent to his serious medical needs,
violated his rights to due process and equal protection and
failed to thoroughly investigate his allegations.  Defendants
have filed a motion for summary judgment.  For the reasons that
follow, defendants' motion will be granted in part.

---

[1] All claims against defendants Nurse Jane Doe and
Lieutenant John Doe were dismissed on March 21, 2006, when
plaintiff failed to comply with the court's order that he provide
their complete names and current work addresses [Doc. #8].

BACKGROUND[2]

On July 24, 2004, plaintiff was confined at Corrigan-Radgowski Correctional Institution in Uncasville, Connecticut. Defendants Hanney and Johnson were distributing the evening meal in plaintiff's housing unit, when, at approximately 4:30 p.m., Hanney arrived at plaintiff's cell.  When plaintiff requested toilet paper, Hanney told plaintiff that he would get the toilet paper after Hanney finished distributing the meal.  In response, plaintiff reached through the food trap in the cell door and emptied his milk container on the floor.

Defendants state that plaintiff refused to remove his hands from the food trap and that plaintiff scratched Hanney when he tried to force the trap closed.  Plaintiff alleges that Johnson grabbed his hand and prevented him from withdrawing his hand while Hanney forced the food trap shut on his hand and arm.  As a result of the incident, plaintiff suffered a laceration on his hand and an abrasion on his arm.  Defendant Quenneville treated plaintiff's injuries at 9:30 p.m.

Defendant State Police Trooper Matlock interviewed plaintiff and Hanney regarding the incident.  Matlock charged plaintiff

---

[2]The facts are taken from Defendants' Local Rule 56(a)1 Statement in Support of Motion for Summary Judgment [Doc. #69-2] and attached affidavits and exhibits [Doc. #69-3] and Plaintiff's Statement of Disputed Factual Issues Pursuant to Local Rule 56(a)2 [Doc. #75-3] with attached exhibits and plaintiff's affidavit [Doc. #75-2].

with disorderly conduct and assault.  On October 28, 2004, plaintiff pled guilty to the charge of creating a disturbance, and the assault charge was nolled.

Plaintiff also received a disciplinary report for assaulting Hanney.  On July 26, 2004, plaintiff was transferred to Northern Correctional Institution in Somers, Connecticut.  At the disciplinary hearing, the hearing officer found plaintiff guilty and sanctioned him with thirty days confinement in punitive segregation along with ninety days loss of communication, visitation and telephone privileges.

## DISCUSSION

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The moving party may satisfy this burden by demonstrating the lack of evidence to support the nonmoving party's case.  PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

A court must grant summary judgment if the pleadings, discovery materials on file and any affidavits show that there is no genuine issue as to any material fact.  Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993).  A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable

jury could return a verdict for the nonmoving party.  <u>Anderson</u>,
477 U.S. at 248.

When a motion for summary judgment is supported by
documentary evidence and sworn affidavits, the nonmoving party
must do more than vaguely assert the existence of some
unspecified disputed material facts or present mere speculation
or conjecture.  <u>Western World Ins. Co. v. Stack Oil, Inc.</u>, 922
F.2d 118, 121 (2d Cir. 1990).  The mere existence of a scintilla
of evidence in support of the nonmoving party's position is
insufficient; there must be evidence on which the jury could
reasonably find for him.  <u>Dawson v. County of Westchester</u>, 373
F.3d 265, 272 (2d Cir. 2004).

The court resolves all ambiguities and draws all permissible
factual inferences in favor of the nonmoving party.  <u>Patterson v.
County of Oneida</u>, 375 F.3d 206, 218 (2d Cir. 2004).  If there is
any evidence in the record from which a reasonable inference
could be drawn in favor of the opposing party on the issue on
which summary judgment is sought, summary judgment is improper.
<u>Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.</u>,
391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding *pro se*, the court reads the
*pro se* party's papers liberally and interprets them to raise the
strongest arguments suggested therein.  <u>See Burgos v. Hopkins</u>, 14
F.3d 787, 790 (2d Cir. 1994).  Despite this liberal

interpretation, however, an unsupported assertion cannot overcome a properly supported motion for summary judgment.  <u>Carey v. Crescenzi</u>, 923 F.2d 18, 21 (2d Cir. 1991).

## A.    Declaratory Relief

Plaintiff names the defendants in their individual and official capacities.  He seeks damages and declaratory relief.

Declaratory relief is intended to enable parties to adjudicate claims before either side suffers great damages.  <u>See In re Combustible Equip. Assoc.</u>, 838 F.2d 35, 37 (2d Cir. 1988). Declaratory relief operates prospectively; it is inappropriate for past acts because all damages already have accrued.  <u>See Nat'l Union Fire Ins. Co. of Pittsbugh, Pa. v. Int'l Wire Group, Inc.</u>, 2003 WL 21277114,*5 (S.D.N.Y. June 2, 2003).  This action concerns an incident that occurred in July 2004.  Thus, declaratory relief is inappropriate, and plaintiff's requests for declaratory relief are dismissed pursuant to 28 U.S.C. § 1915A.

In addition, the Eleventh Amendment to the United States Constitution precludes any award of damages against defendants in their official capacities.  <u>See Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).  Defendants' motion for summary judgment will be granted as to all claims for damages against defendants in their official capacities.

## B.    Deliberate Indifference to Serious Medical Need

Plaintiff claims that defendant Quenneville was deliberately

indifferent to his serious medical needs by failing to treat his injuries immediately after the incident.  He also alleges that defendants Hanney, Johnson and Onofrio were deliberately indifferent by failing to provide immediate medical treatment.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To prevail on such a claim, plaintiff must provide evidence of sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  Id. at 104-06.

Because mere negligence will not support a section 1983 claim, not all lapses in prison medical care constitute a constitutional violation.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003).  The conduct complained of must "shock the conscience" or constitute a "barbarous act."  McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988).  There are both subjective and objective components to the deliberate indifference standard. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious."  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The condition must produce death, degeneration or extreme pain. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

6

Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions.  Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006).

The Court of Appeals for the Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition.  For example, a medical condition significantly affecting the inmate's daily activities or causing chronic and significant pain or the existence of an injury a reasonable doctor would find important constitutes a serious medical need.  See Chance v. Armstrong, 143 F.3d 698, 702 (2d. Cir. 1998).  In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious.  See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).

Not all medical conditions satisfy this component of the standard.  See, e.g., Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994) (symptoms including nausea, shakes, headache and depressed appetite); Jones v. Lewis, 874 F.2d 1125 (6th Cir. 1989)(mild concussion and broken jaw); Sonds v. St. Barnabas Hosp. Correctional Health Servs., 151 F. Supp. 2d 308, 311 (S.D.N.Y. 2001) (cut finger with skin ripped off); Henderson v. Doe, 1999 WL 378333,*2 (S.D.N.Y. June 10, 1999) (broken finger); Veloz v. New York, 35 F. Supp. 2d 305, 312 (S.D.N.Y. 1999) (foot

condition involving a fracture fragment, bone cyst and degenerative arthritis).

Both parties have provided the same medical reports which indicate that plaintiff suffered a v-shaped laceration on his left hand and a minor abrasion on his left wrist.  See Doc. #69-3, Ex. N; Doc. #75-3, Ex. D-1.  Quenneville cleaned the injuries and applied dermabond to the laceration.  Plaintiff's injuries were far less serious that the conditions in the above-cited cases.  The court concludes that plaintiff's injuries do not, as a matter of law, constitute a serious medical need.  Accordingly, defendants' motion for summary judgment will be granted on the claim of deliberate indifference to a serious medical need.

### C.   Excessive Force

Plaintiff contends that defendants Hanney and Johnson used excessive force against him by preventing him from withdrawing his arms from the food trap while forcing the trap shut.  He also alleges that Hanney and Johnson failed to follow department policies because they did not summon a supervisor before attempting to shut the food trap.

When considering the use of force by correctional officers, the court must determine whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  The court considers objective and subjective

components to an excessive force claim.  See id. at 8.

The objective component relates to the level of physical force used against the inmate and whether that force is repugnant to the conscience of mankind.  See id. at 9-10.  The subjective component focuses on whether the correctional officers had a "wanton" state of mind when they were applying the allegedly excessive force.  See id. at 8.  Although a malicious use of force without significant injury can state a cognizable claim for use of excessive force, de minimis use of force rarely is sufficient to state a constitutional claim.  See Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999).  This approach is consistent with the view that excessive force alone does not establish malice or wantonness under an Eighth Amendment analysis.  Romano v. Howarth, 998 F.2d 101, 186 (2d Cir. 1993).

The court uses the extent of the inmate's injuries as one factor in determining whether the use of force could have been thought necessary by correctional staff or demonstrated an unjustified infliction of harm.  See Hudson, 503 U.S. at 7.  Other factors to be considered are the need for use of force, the threat perceived by correctional staff, the relationship between the perceived threat and the amount of force used and efforts by correctional staff to mitigate the amount of the force used.  See Whitley v. Albers, 475 U.S. 312, 321 (1986).  For example, an inmate who does not suffer serious or significant injury may

establish a claim for use of excessive force if he can show that the force used was more than de minimis or was repugnant to the conscience of mankind and that the defendant acted with a sufficiently culpable state of mind.  United States v. Walsh, 194 F.3d 37, 48-50 (2d Cir. 1999).

The evidence submitted by the parties is based on the description of the incident by the three persons involved – Hanney and Johnson who state that plaintiff was assaulting Hanney and plaintiff who alleges that Johnson and Hanney assaulted him. All three have submitted affidavits and plaintiff has submitted a statement from an inmate witness.

Although there was a video camera recording the area surrounding plaintiff's cell, the recording of the incident was not preserved.  Plaintiff asked defendant Matlock to review the recording as part of his investigation.  Defendants have provided the affidavit of defendant Coletti who states that he did not preserve the recording because he concluded that the incident was not clearly visible.  Defendant Coletti also states that he did not receive any request to preserve the recording.  The Court cannot resolve these factual differences on a motion for summary judgment.

If the factfinder were to credit plaintiff's version of the incident that defendants Hanney and Johnson deliberately prevented him from withdrawing his hands while forcing the food

trap shut, they could be found liable for use of excessive force. Accordingly, defendants' motion for summary judgment will be denied on this claim.

Plaintiff also contends that defendants Hanney and Johnson failed to follow department procedures which required them to summon a supervisor before attempting to close the food trap. Failure to comply with state rules does not constitute a constitutional violation cognizable under section 1983. "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), overruled in part on other grounds by Thompson v. Keohane, 516 U.S. 99, 111 (1995); cf. Ruocco v. Tung, 2004 WL 721716, *14 (D. Conn. Mar 30, 2004) (finding no federal obligation to follow prison grievance procedures); Hunnicutt v. Armstrong, 305 F. Supp. 2d 175, 188 (D. Conn. 2004) (same), aff'd in part, rev'd in part on other grounds, 152 Fed. Appx. 34 (2d Cir. 2005). The Court concludes that plaintiff had no federal constitutional right to have Hanney and Johnson comply with institutional rules. However, as the federal excessive force claim will proceed to trial, the Court will consider this claim under its supplemental

jurisdiction.[3]

### D.   Denial of Due Process and Equal Protection

Plaintiff argues that defendant Sarju violated his right to due process by failing to thoroughly investigate the disciplinary charge against him and by acting in collusion with the disciplinary hearing officer to find him guilty of the charge. Neither the disciplinary hearing officer nor plaintiff's advocate at the hearing are named as defendants.

Due process requires that prison disciplinary findings be supported by "some evidence." Superintendent v. Hill, 472 U.S. 445, 455-56 (1985). If there is any evidence in the record to support a guilty finding, the standard is met. See Zavaro v. Coughlin, 970 F.2d 1148, 1148-49 (2d Cir. 1992).

Defendant Sarju was assigned to investigate the disciplinary charge. He spoke to plaintiff, reviewed the incident report and arranged for a statement to be taken from plaintiff's witness. Defendant Sarju did not review the surveillance tape. See Doc. #75-3, Ex. J-1. The incident report provided some evidence to support the charge and Sarju recommended that plaintiff be found guilty. Sarju was not plaintiff's advocate; he only performed the preliminary investigation. See id., Ex. J. He did not participate in the hearing and plaintiff provides no evidence

---

[3]Defendants have not addressed any possible state law claim in their motion for summary judgment.

that the disciplinary hearing officer based his decision on
anything other than the evidence presented at the hearing.  The
Court concludes that plaintiff has not presented evidence
demonstrating a genuine issue of material fact regarding his
claim of denial of due process by Sarju.

In addition, to the extent that plaintiff's allegations may
be construed as a denial of procedural due process, the claim
fails.  To state a claim for violation of procedural due process,
plaintiff must show that he had a protected liberty interest and,
if he had such an interest, that he was deprived of that interest
without being afforded due process of law.  See Sandin v. Conner,
515 U.S. 472 (1995).  He has a protected liberty interest only if
the state created a liberty interest in a statute or regulation
and the deprivation of that interest caused him to suffer an
atypical and significant hardship.  See Tellier v. Fields, 280
F.3d 69, 81 (2d Cir. 2000).  Connecticut courts have held that a
liberty interest is created only when an inmate loses previously
earned good time credit; the loss of the ability to earn good
time credit in the future does not create a liberty interest.
See Abed v. Armstrong, 43 Conn. App. 176, 181-82 (1996).  As a
result of the disciplinary charge, plaintiff was sanctioned with
thirty days confinement in punitive segregation and ninety days
loss of communication, visitation and telephone privileges.
Since he did not lose previously earned good time credit,

plaintiff has no protected liberty interest.  Defendants' motion
for summary judgment will be granted on the due process claims.

Plaintiff also includes an equal protection claim.  The
Court assumes that the basis for this claim is the fact that
Hanney received immediate medical attention while he did not.
Plaintiff's equal protection claim is based on a "class of one"
theory.  To state a valid equal protection "class of one" claim,
plaintiff must allege (1) that he has been intentionally treated
differently from others similarly situated, and (2) that there is
no rational basis for the difference in treatment.  Village of
Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  To prevail on a
"class of one" claim, plaintiff must allege an "extremely high"
level of similarity with the person to whom plaintiff is
comparing himself.  Neilson v. D'Angelis, 409 F.3d 100, 104 (2d
Cir. 2005).  Plaintiff's circumstances must be "prima facie
identical" to the other person's.  Id. at 105.  Here, plaintiff
is comparing his treatment to that of a correctional officer.
Prisoners and correctional staff do not have an extremely high
level of similarity.

In addition, the alleged discrimination must be based upon a
constitutionally impermissible basis, such as race, religion,
national origin, or some other protected right.  The Court has
determined above that plaintiff failed to state an Eighth
Amendment claim for deliberate indifference to serious medical

14

needs.  Thus, the complaint contains no factual basis for an equal protection claim and the claim will be dismissed pursuant to 28 U.S.C. § 1915A.

### E.   Malicious Prosecution

Plaintiff contends that defendants Hanney, Johnson, Onofrio, Lajoie, Murdoch and Murphy conspired to file false reports to have him falsely arrested and maliciously prosecuted.

Plaintiff cannot prevail on a false arrest claim if the arresting officer had probable cause to arrest him.  See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  In addition, to state a claim for malicious prosecution under section 1983, plaintiff must allege facts satisfying the elements of a malicious prosecution claim under state law.  Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002).  One element of a claim for malicious prosecution under Connecticut law is that the defendant acted without probable cause.  Chipperini v. Crandall, 253 F. Supp. 2d 301, 305 (D. Conn. 2003).  Thus, if plaintiff's arrest for assault was supported by probable cause, his claims for false arrest and malicious prosecution both fail.[4]

Probable cause exists when the police receive information sufficient to warrant a person of reasonable caution to believe that an offense has been committed by the person to be arrested.

---

[4]Plaintiff pleaded guilty to the charge of creating a disturbance.  Thus, he can have no false arrest or malicious prosecution claims regarding that charge.

15

Curley v. Suffern, 268 F.3d 65, 70 (2d Cir. 2001).  The police
need not be certain that the person arrested will be prosecuted
successfully.  Krause v. Bennett, 887 F.2d 362, 371 (2d Cir.
1989).  Statements of a victim and eye-witnesses to an alleged
crime constitute probable cause unless there are reasons to doubt
the veracity of such sources and probable cause is not vitiated
because the officer did not investigate the arrestee's claim of
innocence.  Panetta v. Crowley, 460 F.3d 388, 395-96 (2d Cir.
2006).  Indeed, once the officer has probable cause for an
arrest, he is neither required nor allowed to continue
investigating.  Id. at 398; see also Jocks v. Tavernier, 316 F.3d
128, 135-36 (2d Cir. 2003) (noting that Second Circuit law
imposes no duty on the arresting officer to investigate
exculpatory defenses offered by the person being arrested).

Defendant Matlock spoke to plaintiff and defendant Hanney,
the purported victim of the assault, and observed the injuries
suffered by both persons.  Since the statement of the victim is
sufficient to establish probable cause, and defendant Matlock had
no duty to investigate plaintiff's proffered exculpatory
defenses, his claims for false arrest and malicious prosecution
fail.  Defendants' motion for summary judgment will be granted as
to the claims for false arrest and malicious prosecution.

F.   **Destruction of Evidence**

Plaintiff argues that defendants Coletti and Lajoie

16

destroyed the video surveillance evidence.  Criminal defendants
have a constitutional right to exculpatory evidence.  To show a
violation of this right, the criminal defendant must show three
elements: (1) the evidence possessed exculpatory value that was
evident before the evidence was destroyed, (2) the nature of the
evidence is such that the defendant would be unable to obtain
comparable evidence by other means, and (3) the government acted
in bad faith.  See U.S. v. Rastelli, 870 F.2d 822, 833 (2d Cir.
1989).

     With regard to the criminal charges, plaintiff pleaded
guilty to a charge of creating a disturbance while the assault
charge was dismissed.  As he was not prosecuted on the assault
charge, any right to exculpatory evidence regarding that charge
was not violated.

     At the disciplinary hearing, however, plaintiff was found
guilty of assaulting Hanney.  Assuming that the right to
exculpatory evidence also applies to prison disciplinary
hearings, plaintiff fails to establish the elements of the claim.
The disciplinary hearing was held on August 25, 2004, thirty-one
days after the incident.  As surveillance tapes are reused
approximately every thirty days, the tape appears not to have
been in existence at the time of the hearing.  See Coletti Aff.,
Doc. #69-3, Ex. D, ¶ 9.  Plaintiff provides no evidence, however,
that the exculpatory value of the tape was apparent before its

17

destruction.  Although he states that the camera was opposite his
door, he provides no indication whether the entire incident was
clearly visible on the tape or was obstructed by the bodies of
the correctional officers.  Coletti states that only the backs of
the correctional officers were visible on the tape and obstructed
the view of the cell door.  See Coletti Aff., ¶ 10.  Plaintiff
fails to establish a constitutional violation.  Defendants'
motion for summary judgment will be granted on any claims
regarding destruction of evidence.

    **G.  Conspiracy**

    Plaintiff also contends that the defendants conspired to
effect his false arrest and malicious prosecution, destroy the
video surveillance tape and file false reports.

    The Court of Appeals for the Second Circuit has consistently
held that a claim of conspiracy to violate civil rights requires
more than general allegations.  Expansive allegations must be
supported by specific instances of misconduct.  Ciambriello v.
County of Nassau, 292 F.3d 307, 325 (2d Cir. 2002); see also,
e.g., Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir.
1999) (holding that vague, general or conclusory allegations of
conspiracy are insufficient to withstand a motion to dismiss).

    To state a claim for conspiracy under section 1983,
plaintiff must allege facts showing an agreement between two or
more state actors to act in concert to inflict an

unconstitutional injury on plaintiff and an overt act done in furtherance of the conspiracy that causes damages.  See Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  In addition, if the underlying claim is dismissed, a conspiracy claim cannot stand.  See U.S. v. All Meat and Poultry Prods. Stored at Lagrou Cold Storage, 470 F. Supp. 2d 823, 829 (N.D. Ill. 2007).

Plaintiff alleges conspiracies to falsely arrest and maliciously prosecute him, impose disciplinary sanctions and destroy evidence.  The Court has concluded above that plaintiff was not denied due process in connection with the disciplinary hearing and was not falsely arrested or maliciously prosecuted. In addition, defendants did not violate any constitutional right to evidence.  Thus, any claims of conspiracy to effect those results fail.

Plaintiff also contends that defendants conspired to file false reports against him.  Filing a false report, that is, falsely accusing plaintiff of wrongful conduct, is not a constitutional violation.  See Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) (holding that inmates have no constitutionally protected immunity from being falsely or wrongly accused of misconduct).  Thus, allegations that defendant filed false reports cannot support a claim of conspiracy to deny constitutionally protected rights.  Defendants' motion for summary judgment will be granted as to the conspiracy claims.

19

### H.    Failure to Investigate Thoroughly and Inability to Press Charges

Plaintiff argues that defendant Matlock, a Connecticut State Police Trooper, failed to thoroughly investigate plaintiff's claim that he was assaulted by Hanney and Johnson because he did not take photographs of plaintiff's injuries[5] and did not review and secure the surveillance videotape.  Plaintiff also contends that Matlock did not permit him to press charges against Hanney and Johnson.

Plaintiff does not have a constitutionally protected right to have any defendant disciplined or prosecuted.  See <u>S. v. D.</u>, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").  He also does not have the right to have the matter investigated.  See <u>Town of Castle Rock v. Gonzales</u>, 545 U.S. 748, 768-69 (2005) (victim of crime has no procedural or substantive due process interest in investigation or prosecution of perpetrator).  Accordingly, defendants' motion for summary judgment is granted as to all claims against defendant Matlock.

During the interview with defendant Matlock, plaintiff stated that he was assaulted by defendants Hanney and Johnson.

---

[5]The videotape relied on by both parties shows that correctional staff took photographs of plaintiff's injuries immediately following his interview with defendant Matlock.  <u>See</u> Doc. #69-3, Ex. U, Doc. #75-3, Ex. V.  Plaintiff cites no authority requiring defendant Matlock to take duplicate photos.

At no time, however, did plaintiff ask to press charges against either defendant.  Plaintiff alleges no facts showing that any defendant prevented him from requesting an investigation into his claims of assault.  See Doc. #69-3, Ex. U, Doc. #75-3, Ex. V.

### I.   Supervisory Liability

Plaintiff's final claim is that the defendant supervisors were indifferent to the actions of their subordinates.  He also alleges that defendant Onofrio did not discipline subordinates for a known pattern of abuse.  As the Court stated above, plaintiff has no right to have any defendant disciplined.  In addition, he has presented no evidence of any pattern of abuse. The claim against defendant Onofrio will be dismissed.

Because the doctrine of respondeat superior is inapplicable in section 1983 cases, see Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999), supervisors are not automatically liable under section 1983 when their subordinates commit a constitutional tort.  Plaintiff may show the personal involvement of a supervisory official, thereby establishing supervisory liability, by demonstrating one or more of the following criteria: (1) the defendant actually and directly participated in the alleged acts; (2) the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) the defendant created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional

violation or allowed such a policy or custom to continue; (4) the defendant was grossly negligent in his supervision of the correctional officers who committed the constitutional violation; or (5) the defendant was deliberately indifferent to the plaintiff's rights by failing to act in response to information that unconstitutional acts were occurring.  See Iqbal, 490 F.3d at 152.  In addition, the plaintiff must demonstrate an affirmative causal link between the inaction of the supervisory official and his injury.  See Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002).

Plaintiff also asserts claims of supervisory liability against defendants Murphy, Murdoch, Acosta and Strange.  On July 27, 2004, plaintiff wrote a letter to defendant Deputy Commissioner Murphy, who referred the letter to defendant Acosta for response.  In the letter, plaintiff asked Murphy to review the video surveillance tape, but did not ask that the tape be preserved for use in his disciplinary hearing.

The Court of Appeals for the Second Circuit has held that writing a letter to a supervisory official and the official ignoring the letter or forwarding the letter to another official for response is insufficient to demonstrate the personal involvement of the supervisory official.  See, e.g., Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997).  Absent any other evidence, the claims against defendant Murphy will be dismissed.

22

Defendant Acosta and Strange responded to letters written by plaintiff to other correctional officials, requesting review of his claims that he was assaulted.  The letter to Murphy was forwarded to Acosta on August 31, 2004.  Strange responded to a letter written in January 2005.  Thus, by the time Acosta and Strange prepared their responses, the video surveillance tape no longer existed.  Each defendant reviewed the then-existing evidence and responded to plaintiff's inquiries.  The fact that plaintiff was not satisfied with the responses does not constitute a claim of supervisory liability.  The claims against Acosta and Strange will be dismissed.

Plaintiff also presents no evidence supporting a claim of supervisory liability against Murdoch.  The claims against him will be dismissed as well.

**J.   Qualified Immunity**

The doctrine of qualified immunity protects government officials from liability for damages caused by the performance of discretionary official functions if their conduct does not violate a clearly established right of which a reasonable person would have been aware.  See Zellner v. Summerlin, 494 F.3d 344, 367 (2d Cir. 2007).

When considering a claim of qualified immunity, the court first determines whether, construing the facts favorably to the non-moving party, there is a violation of a constitutionally

23

protected right.  If the court finds a violation, it next must determine whether, considering the facts of the case before it, that right was clearly established at the time of the incident. See Saucier v. Katz, 533 U.S. 194, 201 (2001).  To evaluate whether a right is clearly established, the court must determine whether it would be clear to a reasonable correctional officer that his conduct in these circumstances was unlawful.  Id. at 202.

The Court has denied defendants' motion for summary judgment on the excessive force claim.  The Court concludes that a reasonable correctional officer would understand that preventing plaintiff from withdrawing his hand while forcing the food trap shut on the hand violated plaintiff's constitutional rights. Accordingly, defendants' motion for summary judgment will be denied on the ground that Hanney and Johnson are protected by qualified immunity.

**CONCLUSION**

All claims for declaratory relief, denial of equal
protection and supervisory liability are **DISMISSED** pursuant to 28
U.S.C. § 1915A.  Defendants' Motion for Summary Judgment [**Doc.
#69**] is **GRANTED** as to all claims except the claim for use of
excessive force and the supplemental state law claim of failing
to follow departmental policy against defendants Hanney and
Johnson in their individual capacities.  The case will proceed to
trial against defendants Hanney and Johnson on these claims.

To the extent that the complaint may be construed to assert
state law claims against any of the other defendants, the Court
declines to exercise supplemental jurisdiction over those
claims.[6]

**SO ORDERED** this 3d day of March 2009, at Bridgeport,
Connecticut.

```
          /s/
_____
Warren W. Eginton
Senior United States District Judge
```

---

[6]Where all federal claims have been dismissed, the court may
decline to exercise supplemental jurisdiction over state law
claims.  See 28 U.S.C. § 1367(c)(3); Giordano v. City of New
York, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases).

25